## BEVERLY v. ALLIED CHEMICAL CORP., et al.
### No. 60-263-L.

Circuit Court, Duval County.
April 25, 1961.

Bedell & Bedell, Jacksonville, for plaintiff.

George Steljes, Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for defendant Allied Chemical Corp.

John S. Cox, Jacksonville, for defendant Valdosta Southern R.R. Co.

WILLIAM S. MANESS, Circuit Judge.

By his third amended complaint, plaintiff asserts that the defendant Allied Chemical Corporation (hereinafter referred to as "Allied") should be required to respond in damages for personal injuries alleged to have been sustained by plaintiff while plaintiff was attempting to open the sliding door of a railroad boxcar containing a shipment of "salt cake" sold by Allied to plaintiff's employer, Owens-Illinois Glass Company. The salt cake was supplied, loaded in Norfolk & Western's boxcar number 72018, sealed and dispatched to the railroad carrier by American-Viscose Corporation at its Front Royal, Virginia, plant on May 13, 1959, and said car arrived at the Owens-Illinois plant at Clyattsville, Georgia, on May 16. Late that day or the following day, *the door from which the car is unloaded* was opened with difficulty with the aid of a crowbar. The vents in the top of the car were then opened and the "opposite door" was opened a foot or two and the car was partially unloaded (10 or 15 per cent); on the 17th day of May when plaintiff came on duty about 3 P.M. he tried to open the "opposite door" for more ventilation but could not move it alone. He then rigged a ratchet type car door opener on this door and as he operated the ratchet, the door left its retaining tracks and fell on the plaintiff causing the injuries complained of herein.

Without attempting to recite all the undisputed facts, it is clear that Allied did not *in fact* participate in the loading of the salt cake, did not see or know the condition of the boxcar prior to the alleged injury and that so far as Allied is concerned the transaction was purely a paper one; and that the actual supplying, loading, sealing and dispatching of the entire shipment was done by American-Viscose under a contract with Allied. On the other hand, it is equally clear that so far as Owens-Illinois (the purchaser of the salt cake) is concerned, it did not know that such loading, etc., was done by American-Viscose prior to the alleged injury, nor for some time thereafter.

The theory of plaintiff's case is that Allied was the "supplier" of the *salt cake* in law and as such was under a non-delegable legal duty "to exercise reasonable care to make such shipment safe for the use for which it was supplied, including the unloading of such shipment at its destination"; which duty, it is alleged, Allied violated by shipping the salt cake in a boxcar that was "unsafe, dangerous and defective" and unfit for safe unloading, and that such condition " . . . was discoverable upon reasonable inspection".

Allied contends, by its motion for summary judgment now before the court, that there is no genuine issue as to any material fact essential to hold Allied responsible; that as to Allied, plaintiff's theory is untenable in law and fact and that it is entitled to judgment in its favor as a matter of law.

Counsel for plaintiff and Allied both concede that the substantive law of Georgia must be applied. It is further conceded that Allied exercised no direction or control over American-Viscose; that American-Viscose was not a servant (employee-agent) of Allied; and, except for the question of ratification later discussed herein, that the alleged liability of Allied is not grounded on any of the provisions of "Georgia Code section 105-5-2 (4415)" which specifies the circumstances under which an employer may be held liable for the negligence of an independent contractor.

As a matter of law and fact, plaintiff argues that under the laws of Georgia (apart from the provisions of the Georgia Code section 105-501 (4414) and section 105-502 (4415)) every person owes a duty to exercise ordinary care not to supply by sale a "product" which is so defectively constructed *or conditioned* as to be *imminently dangerous* to the person to whom supplied (Kuhr Bros., Inc. v. Spahos, 81 S.E. 2d 491, and authorities therein cited), including those employees of such person whom the supplier should expect to use or handle such product (Moody v. Martin Motor Co., 46 S.E. 2d 197). Therefore, plaintiff asserts, a jury

question is presented at least as to whether or not the manner and condition in which the salt cake was loaded or shipped by American-Viscose was "imminently dangerous". If that theory be correct, it follows that the jury must be so charged and further told that — *"Under such circumstances,* the fact that Allied did not actively participate in such loading or shipping will not bar plaintiff's recovery because the negligence of American-Viscose is imputed to Allied". BUT, the undisputed fact is that it was only the condition of the boxcar that was dangerous, defective or unsafe and the sole instrumentality through which plaintiff was injured. It is clearly shown that neither the salt cake nor the manner in which it was loaded played any part in the injury except as the product that occasioned the bringing of the boxcar to the place of the injury. Therefore, the only negligence shown or that can be attributable to American-Viscose is its failure to reject this particular box car and insist that the carrier supply another. Can this species of negligence be imputed to Allied on the theory that the "shipping container" (boxcar) becomes a part of the "product" sold and supplied? To do so would be contrary to the actual facts; would distort the meaning of the words "imminently dangerous" as used in the Kuhr Bros. case, supra, and impose on Allied full responsibility for any negligence of American-Viscose in this case contrary to the Georgia Code and the Kuhr Bros. case, supra. Salt cake is not an inherently dangerous product such as a defective flue installed in violation of a city ordinance, or defective automobile wheels incorporated in a finished product, or defectively constructed scaffolding furnished to a subcontractor for the use of the employees of the sub-contractor; nor is the loading and shipping thereof fraught with any special hazard so that an otherwise *non-dangerous product* is likely to be converted into an *"imminently dangerous"* product because it cannot be safely unloaded by a person exercising due care for his own safety. For aught that appears, the salt cake itself and the manner of its loading had no more to do with plaintiff's injury than would have been the case if the same boxcar had been sent to Owens-Illinois empty for loading the products of Owens-Illinois. Therefore, this court finds that there is no theory of law or fact shown herein by which the negligence of American Viscose, if any, can be imputed to Allied.

Finally, plaintiff asserts, the contents of an exchange of letters between Owens-Illinois and Allied after plaintiff's injury are sufficient at least to raise a lawful inference, to be drawn by the jury, that Allied, after full knowledge of the facts, ratified the negligent act of American-Viscose by its failure to deny responsibility or state a legal defense. Inasmuch as the contents of the

letters are not in dispute, and no extraneous evidence would be admissible to vary the contents thereof, it becomes a question of law and not of fact as to whether or not the letter of Allied, dated May 28, 1959, constitutes ratification. This court does not find in said letter or elsewhere any acknowledgment that American-Viscose had done any wrongful act that inured to Allied's benefit in any way; on the contrary, Allied expressed the same concern, surprise and regrets that Owens-Illinois had conveyed. In fact, the letter (based on a study of photographs) expressed a puzzlement over the fact that a car in such condition got into circulation and for humanitarian and business reasons (loss of part of the cargo and customer complaint) gave assurances of efforts to prevent recurrence. Under no interpretation of the letters can it be said that Allied stood to gain anything or that the negligence of American-Viscose *in loading a defective boxcar* conferred any pecuniary or other benefit on Allied, as in the case of the clerk who paid his employer with the proceeds of a wilful conversion of four bales of cotton or the case of the timber cutter who trespassed on the land of another to cut timber for his employer's account. Nor can the expression of amazement as to " . . . how the car was ever released *by the shipping department* . . . " alter the fact that the car was released by American-Viscose from its plant for " . . . account of Allied Chemical Corporation, Shipper . . . ", and that the shipping memo was so signed by an employee of American-Viscose, which is a separate legal entity.

Although this court has heretofore upheld the complaint herein as against a motion to dismiss by Allied, this court is now of the opinion that the facts developed, in support of and in opposition to Allied's motion for a summary judgment, fail to show any theory in law or in fact upon which plaintiff can hold Allied liable for the alleged negligence of American-Viscose and Allied is entitled to prevail on its said motion.

Accordingly, it is ordered and adjudged that the motion of defendant, Allied Chemical Corporation, a corporation, be, and the same is hereby granted, and plaintiff, Billy Grady Beverly, shall take nothing from said defendant by his complaint herein and said defendant shall go hence without day and recover of and from said plaintiff its costs herein to be taxed pursuant to motion and notice.

It is further ordered and adjudged that the crossclaim by Valdosta Southern Railroad Company, a corporation, against Allied Chemical Corporation, a corporation, should be, and the same is hereby dismissed without prejudice.